Filed 8/9/16  California Advocates for Nursing Home Reform v. Smith CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CALIFORNIA ADVOCATES FOR NURSING HOME REFORM et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> KAREN SMITH, as Director, etc., et al., <br><br> Defendants and Respondents. | A145267 <br><br> (Alameda County Super. Ct. No. RG 12653326) |

Plaintiff California Advocates for Nursing Home Reform (Advocates), a nonprofit organization, and individual plaintiffs Gail Dawson and Java Williams (collectively plaintiffs) appeal a judgment of dismissal entered following entry of an order sustaining without leave to amend a demurrer to their third amended complaint for declaratory and injunctive relief (complaint). Plaintiffs contend the court erred in finding that they lacked standing to pursue their claims. With one exception, we agree with the trial court that plaintiffs have failed to allege that they suffered an injury as a result of defendants' alleged conduct sufficient to support standing in this action. We conclude, however, that plaintiffs have standing to pursue their claim that that the former Director of the Department of Public Health abused his discretion by approving agreements for the operation of skilled nursing care facilities by a nonlicensed management company in violation of state law. Accordingly, we shall reverse the judgment of dismissal as to the first cause of action but affirm the judgment in all other respects.

1

## Background

The complaint names as defendants Country Villa Service Corp. (CVSC), Country Villa East L.P., C.V. Westwood Single Purpose Entity, LLC, Steven Reissman, individually and as trustee of the Reissman Family Trust (collectively the Country Villa defendants), and Ron Chapman (director), in his capacity as the Director of the California Department of Public Health (the department).[1] The complaint alleges that defendant CVSC "is a corporation engaged in the nursing home business as a so-called 'management company.' " Country Villa East L.P. and C.V. Westwood Single Purpose Entity, LLC are licensed by the department to operate skilled nursing facilities in California. Steven Reissman and the Reissman Family Trust own and control the Country Villa defendants.

According to the complaint, the Country Villa defendants executed a "management agreement" under which CVSC agreed to "assume operational control" of skilled nursing facilities operated by Country Villa East L.P. and C.V. Westwood Single Purpose Entity, LLC. This management agreement is allegedly representative of similar agreements CVSC entered into with more than 40 skilled nursing facilities in California. Each management agreement was approved by the department.

The complaint alleges that Gail Dawson is the administrator of the Estate of Minnie Bell Green, deceased, who prior to her death was a resident at a skilled nursing facility operated by CVSC. Green allegedly "received inadequate care, was subjected to cruel and inhumane conditions, suffered, sickened and died while a patient at" the CVSC operated facility. Williams is the successor in interest to her mother, Suzanne Williams, deceased, who prior to her death was a resident at a skilled nursing facility operated by CVSC. Williams also allegedly "received inadequate care, was denied adequate care to

---

[1] Plaintiffs note in their opening brief that since the filing of this action defendants Country Villa East, LP and C.V. Westwood Single Purpose entity, LLC, "have filed for protection under Bankruptcy law and this action against them remains stayed." Accordingly, they purport to proceed on appeal "only against Chapman, Country Villa Service Corp., and Steven Reissman."

Karen Smith has replaced Ron Chapman as director of the department.

address her needs for nutrition, hydration and skin integrity, and developed a serious pressure sore due principally to the failure to reposition her during times when she was in bed while a patient" at the CVSC operated facility. Advocates is "a statewide nonprofit . . . organization . . . dedicated to improving the care, quality of life, and choices for California's long term care consumers. . . . One or more members of [Advocates] are residents and former residents of facilities operated and managed by defendants" CVSC and Steven Reissman.

The first cause of action, against only the director, alleges that a controversy exists between plaintiffs and the department as to whether the CVSC management agreements approved by the department are invalid and unlawful under California law. The fourth cause of action alleges that plaintiffs are entitled to mandatory and injunctive relief against the director. The second cause of action against all defendants alleges that a dispute has arisen as to whether the management agreements violate state and federal law because they authorize payment of a percentage of revenue by a licensee to an outside management company, or payment based on a formula not directly tied to the actual cost of any management services which, it is contended, constitutes an illegal, fraudulent and unfair business practice under Business & Professions Code section 17200 et seq. [2] The third cause of action against only the Country Villa defendants alleges that a dispute has arisen as to whether the management agreements violate state and federal law because they "deprive a licensee's administrator and governing body of the authority and power to manage the respective licensee's business within the requirements of valid federal and state laws and regulations—particularly those state laws pertaining to the provision of adequate nursing care." The fifth cause of action alleges that restitution, injunctive relief and an accounting should be ordered to redress the overpayment of management fees which "are in reality distributions of profit from [the licensees] and bear no relation to the cost of providing management services by CVSC and Reissman." Plaintiffs allege that

---

[2] Plaintiffs "do not appeal from the trial court's determination that [Advocates] did not have standing under Business and Professions Code § 17200 et seq."

3

these overpayments violate state and federal law, that "the illegal practice of charging for unnecessary management fees costs the State of California approximately $100 million annually," and that the payments contribute to the provision of "inadequate care to elders in their care and custody, and . . . violation of wage and hour laws."

Plaintiffs seek, among other things: (1) a declaration that under state law the management agreements are invalid; (2) a declaration that management agreements that provide for fees for management services in excess of the cost of providing management services plus a reasonable profit are fraudulent, illegal and unfair, and therefore invalid; (3) a declaration that management agreements that provide for fees for management services in excess of the cost of providing management services plus a reasonable profit are contrary to State law because they deprive the licensee of funds necessary to the operation of the skilled nursing facility in a manner that complies with federal and state health and safety standards, and are therefore invalid; (4) an injunction prohibiting the director from approving such agreements; and (5) an order requiring disgorgement to the licensees of all sums paid to CVSC under such management agreements during the last four years.

The trial court sustained without leave to amend defendants' demurrers to the complaint on the ground that plaintiffs lack standing to pursue their claims. The court held that "plaintiffs have not shown that they have personally been harmed by a [department]-approved management company while residing in a [skilled nursing facility]" and are merely alleging "a theoretical disagreement over the meaning of [the relevant statutes], which is not sufficient to establish standing to sue for declaratory and injunctive relief." Following entry of a judgment of dismissal, plaintiffs timely filed a notice of appeal.

4

**Discussion**

1.    *Relevant State Law*

Health & Safety Code[3] section 1250 et seq. establish licensing requirements for health facilities. A skilled nursing facility, as defined in section 1250, subdivision (c), is a health facility for purposes of the licensing requirements. Section 1253, subdivision (a) prohibits any "person, firm, partnership, association, corporation, or political subdivision of the state, or other governmental agency within the state" from "operat[ing], establish[ing], manag[ing], conduct[ing], or maintain[ing] a health facility . . . without first obtaining a license." (See also § 1298, subd. (a)(1) ["No person, firm, partnership, association, corporation, political subdivision of the state, or other governmental agency within the state shall continue to operate, conduct, or maintain an existing health facility without having applied for and obtained a license or a special permit as provided for in this chapter."].)

Section 1265 sets forth the applicable requirements for "[a]ny person, political subdivision of the state, or governmental agency desiring a license for a health facility, . . . or approval to manage a health facility currently licensed as a health facility." Specifically, section 1265 directs one seeking "approval to manage" a health facility to "file with the department a verified application on forms prescribed and furnished by the department" containing, among other items, evidence "satisfactory to the department" that "the applicant is of reputable and responsible character" and that the applicant is able "to comply with this chapter and of rules and regulations promulgated under this chapter by the department" (*id*., subds. (e), (f)). Subdivision (g) of section 1265 requires that "[e]ach applicant to operate a skilled nursing facility" submit evidence that it "possesses financial resources sufficient to operate the facility for a period of at least 45 days." However, a "management company shall not be required to submit this information." (*Ibid*.) For other types of health facilities (acute general and psychiatric hospitals and

---

[3] All statutory references are to the Health and Safety Code unless otherwise noted.

5

"special hospitals") " 'manage' means to assume operational control of the facility." (*Id.*, subd. (l).)

Section 1267.5, subdivision (a)(1) requires that "Each applicant for a license to operate a skilled nursing facility shall disclose to the state department the name and business address of each general partner if the applicant is a partnership, or each director and officer if the applicant is a corporation, and each person having a beneficial ownership interest of 5 percent or more in the applicant corporation or partnership." Subdivision (a)(3)(A) of section 1267.5 adds, "If the [skilled nursing] facility is operated by, or proposed to be operated in whole or part under, a management contract, the names and addresses of any person or organization, or both, having an ownership or control interest of 5 percent or more in the management company shall be disclosed to the state department. This provision shall not apply if the management company has submitted an application for licensure with the state department and has complied with paragraph (1)."

2.      *Standing*

"The standard of review on appeal following the sustaining of a demurrer is de novo. [Citation.] 'In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' " (*Hervey v. Mercury Casualty Co*. (2010) 185 Cal.App.4th 954, 960.) These rules apply in determining the threshold issue of standing. (*Ibid*.)

A. First and fourth causes of action against the director

We cannot agree with the trial court that plaintiffs lack standing to pursue their claim that the director wrongly continues to approve management agreements that are invalid under state law. Plaintiffs allege that under section 1253 skilled nursing homes must be operated by licensees rather than by unlicensed management companies, that the department has "adopted formal policies and practices which are in accord with such

6

state law," and that "even though [the director] and [the department] have a mandatory ministerial duty to comply with such laws, and with policies and procedures which have been formally adopted by [the department], [the director] has improperly and illegally adopted an informal and unpublished policy and practice of approving [invalid] management agreements." Although not pled as a petition for a writ of mandate, plaintiffs' claim for declaratory and injunctive relief is essentially the equivalent. (*California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 9 [Declaratory judgment establishing that the state has a duty to act provides relief equivalent to mandamus and makes issuance of the writ unnecessary.]; *AIDS Healthcare Foundation v. Los Angeles County Dept. of Public Health* (2011) 197 Cal.App.4th 693, 700 ["mandamus is available to compel a public agency's performance or to correct an agency's abuse of discretion when the action being compelled or corrected is ministerial"].) While standing to bring a mandate action generally requires that the petitioner be "beneficially interested" in the outcome of the proceeding, " ' " '[where] the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the relator need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced." (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 439; *Urban Habitat Program v. City of Pleasanton* (2008) 164 Cal.App.4th 1561, 1581 ["So long as the 'public duty is sharp and the public need weighty' a citizen has a sufficient interest to confer standing."].) This "exception promotes the policy of guaranteeing citizens the opportunity to ensure that no governmental body impairs or defeats the purpose of legislation establishing a public right." (*Green v. Obledo* (1981) 29 Cal.3d 126, 144.) In this case, the department has a public duty to enforce statutory licensing requirements for skilled nursing facilities that is both "sharp and weighty." Plaintiffs' complaint presents a clear-cut question of whether the department may authorize an unlicensed entity to operate skilled nursing facilities, and there would be a strong public interest in prohibiting it from doing so if such authorization were determined to violate state law. Accordingly, plaintiffs have standing

7

to bring an action against the department for declaratory and injunctive relief to determine whether it is complying with its statutory obligations in this respect.

In support of the demurrer to plaintiffs' second amended complaint, the director argued that the complaint should be dismissed because California law expressly permits the department to approve unlicensed management companies to operate licensed skilled nursing facilities. The trial court overruled defendants' demurrer on this ground, explaining, "The allegations in the operative complaint sufficiently state a dispute that is the proper subject for declaratory relief in that there is a controversy between the parties over the interpretation and enforcement of the statutes. A demurrer is not a proper vehicle to adjudicate the issues presented." Although the department reasserted this argument in the demurrer to plaintiffs' third amended complaint, the court did not reach the issue because it sustained the demurrer without leave to amend based on the lack of standing. On appeal, the department renews the argument that the dismissal should be upheld because plaintiffs' claim regarding section 1253 fails as a matter of law.

Plaintiffs renew their argument that a demurrer is not the proper vehicle to resolve the statutory interpretation issue. They argue, "proof of the meaning of unclear statutes can be complex. [Citation.] Any decision on the merits should follow any necessary discovery—such as into the regulatory agency's analysis and interpretation of legislative intent, the effect of federal law on the issue, the effect on federal law of one competing interpretations, and should follow comprehensive briefing on the issue by all parties." While we do not suggest that such far-ranging discovery is necessary or appropriate before the court can decide the legal issue presented, we do agree that "demurrer is not the proper context to reach and resolve the merits of plaintiffs' claim for declaratory judgment." (*Qualified Patients Assn v. City of Anaheim* (2010) 187 Cal.App.4th 734, 756 [It is an abuse of discretion for a judge to sustain a demurrer to a legally sufficient complaint for declaratory relief " 'even if the judge concludes that the plaintiff is not entitled to a favorable declaration.' "].) Because the merits of the legal issue have not been decided in the trial court or fully addressed in the briefing before this court, the requested declaration of the department's obligations concerning the approval of

8

unlicensed entities to manage the operations of skilled nursing facilities should be made in the trial court in the first instance.

## B. Remaining causes of action

Plaintiffs' additional causes of action seek a declaration that the management agreements are unfair, illegal or fraudulent under Business and Professions Code section 17200 and conflict with state and federal laws and regulations that govern the licensee's responsibility to provide adequate patient care. Unlike plaintiffs' claim that the department is not authorized to approve skilled nursing facility management agreements with unlicensed entities, these claims do not present a discrete issue of statutory interpretation. These claims raise not only issues concerning the meaning of multiple state and federal statutes and regulations, but factual issues concerning the basis and justification for the fees that have been charged by CVSC for managing the skilled nursing facilities. To establish standing to assert these claims, plaintiffs must plead that they, or those they represent, suffered an actual injury as a result of the management agreements or that they are "beneficially interested in the controversy" in a way that is "concrete and actual, and not conjectural or hypothetical." (*County of San Diego v. San Diego NORML* (2008) 165 Cal.App.4th 798, 814; see also Bus. & Prof. Code, § 17204 [actions for relief under section 17200 may be prosecuted by "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition"]; *Fladeboe v. American Isuzu Motors Inc*. (2007) 150 Cal.App.4th 42, 54 [plaintiff lacks standing to seek declaratory relief under a contract to which plaintiff is not a party or third party beneficiary]. )

While plaintiffs have alleged that family members were injured while patients at CVSC-managed facilities, they offer only the barest allegations that these injuries were caused by defendants' management agreements or by the fees charged under those management agreements. The complaint alleges: "As a result of the practices of [the defendants] [¶] . . . [¶] . . . patients residing in facilities operated by [Country Villa East L.P., C.V. Westwood Single Purpose Entity, LLC and other licensee-operated facilities], including Green and Williams, have been and are deprived of care and suffer predictable

9

injury or death." As the district court explained in dismissing plaintiffs' related federal claims for lack of standing, "Plaintiffs have failed . . . to plead a direct causal connection between the execution of nursing home management agreements and the provision by nursing homes of substandard care. The execution of a management contract does not directly cause nursing home services to become substandard, just as the choice not to execute a management contract does not insure that a nursing home's care will be adequate. The two are simply untethered. If a nursing home resident receives substandard care, they may have a claim against the facility that provided that care, or the owners or managers of that facility—but that is not the claim Plaintiffs plead here. Because Plaintiffs do not adequately plead that substandard care at a nursing facility is more likely simply by virtue of that facility's execution of a management services contract, they have not established injury in fact or causation." (*Cal. Advocates for Nursing Home Reform, Inc. v. Chapman* (N.D. Cal. June 3, 2013) 2013 U.S. Dist. Lexis 77807, pp. **18-19; see also *Cal. Advocates for Nursing Home Reform, Inc. v. Chapman* (N.D. Cal. June 2, 2014) 2014 U.S. Dist. Lexis 75273, pp. *19-20 [denying plaintiffs' motion for relief from order of dismissal but granting plaintiffs' request that state claims be remanded to the Alameda County Superior Court].) For the same reason, the present complaint fails to allege facts establishing plaintiffs' standing to assert their remaining claims. Because plaintiffs have been given multiple opportunities to correct this deficiency (the complaint before us being the third amended complaint in this action) and have failed to do so, there was no abuse of discretion in the court's denial of leave to amend.

## Disposition

The judgment of dismissal is reversed as to plaintiffs' first and fourth causes of action against the Director of the Department of Public Health. In all other respects, the judgment is affirmed. The parties shall bear their respective costs on appeal.

_____
Pollak, J.

We concur:


_____
McGuiness, P.J.


_____
Jenkins, J.